Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 1st Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-9-1-2-3-8, People v. Dominique Greer. Okay, good afternoon, everybody. I'm Justice Walker and I have here with me today Justice Pierce and Justice Coughlin, and I'd like to now have the lawyers to please introduce yourselves. Assistant City Attorney Tyler Cox on behalf of the people of the state of Illinois. This is Paul Walker Bright on behalf of the defendant Dominique Greer. Mr. Bright. And Mr. Flem, are you going to argue. I'm going to argue yes. Thank you, Your Honor, I'm here just to observe. I've worked on the brief too. Okay. All right, and good afternoon to all of you. And let's start with you, Mr. Bright, how much time do you need here today. Um, I think we've got up to 20 minutes I don't anticipate using all of the 20 minutes, but I don't know how many questions we're going to get so I don't have a fixed amount of time in mind. Sure. And how much time you want to reserve for rebuttal, because I'll reserve. I'll reserve five minutes, five minutes. Okay. All right, and Mr Cox how much time do you need today. Yes, Judge 15 to 20 minutes whatever your honor decides. Sure, we do give each side 20 minutes. And if we're asking questions and because of our questions. You are not able to get in on an important point that you wanted to make. Please let us know we'll usually give you a minute to wrap up that point that you were trying to get to and never were able to because of our questions. With that, Mr. Bright, we will start with you. Very good. May it please the court. My name is Paul Walker bright and I represent the defendant Dominique career. Mr Greer is conviction should be reversed, and Mr Greer acquitted outright, or in the alternative, the case should be remanded for a new trial for two main reasons. First, the trial court committed several legal errors which individually and collectively deprived Mr career of a fair trial. And secondly, there is insufficient evidence to support a guilty verdict beyond a reasonable doubt. So let me start with the trial courts legal errors, the trial court committed for legal errors. The first one was failing to acknowledge and resolve critical inconsistencies in between the testimony of the two main witnesses, Tommy Hollis and Jennifer The third error was relying on evidence the judge had previously ruled was inadmissible hearsay. And the fourth error was making erroneous factual findings based on a mistaken recollection of the evidence. So turning to the first legal error. The judge did not acknowledge that there were any country. Right before you go on with the legal errors, you make an argument in your brief that this should be a de novo review, because the trial judge admitted into evidence. Or, well, he is he sustained certain evidence and he relied upon the evidence, which he sustained later and making this decision do you want to go into that a little bit. On the standard of review. The cases that people be Ebony and people be divine. Yes. Under those under those cases. Those cases held that there's there is no deference to the trial court where it mistakenly recalls evidence that was the holding of the court in people the evidence, or excuse me, people be Williams. And there is also no deference to be provided to the trial courts inconsistent credibility findings, which this court found in the case of people versus Mitchell. So we believe that the correct standard of review here is de novo, because of the trial courts mistaken recollection and his erroneous factual findings in particular with regards to the inconsistent findings on the witnesses credibility. Explain it, what do you mean inconsistent findings credibility. So the judge found that both Mr Hollis and Miss Smith were credible witnesses, but the two witnesses versions of events differ so greatly and in so many ways that they both cannot be accurate. The states of affairs testified by the two witnesses, both cannot exist at the same time. Yet the judge found that to be the case by finding that Jennifer was incredible. What was the great inconsistency. There are several inconsistencies judge. For example, give me the best, the best inconsistent. One of the ones that leaps out the strongest is the fact that Mr Hollis said he left the bedroom, and then observe several things that happened in the living room. Miss Smith testified that Mr Hollis never left the bedroom. And if Mr Hollis never left the bedroom then of course he didn't see the things that he said he did. How do you know that. How do we know that he didn't leave the bedroom. No, how do you know he couldn't see what he saw or said he saw from the bed, because they both testified that the door was closed both Mr Hollis and Miss Smith testified that the bedroom door was closed, and that they did and that And Miss Smith said that Hollis never left the bedroom, and he himself did not testify that he saw anything from inside the bedroom. He testified very clearly that the bedroom was in the living room. I don't know if you can hear me Mr but it's also someone's got a radio going in the background. You can turn off that radio or there's something in the background. I don't have anything. Okay, I can hear it but okay, but the so this case was was not an eyewitness case but instead was an eyewitness case is that correct. Yes, that's correct. All right, but you can finish answering Justice Pierce's question I just wanted to make that clear. And if you want, if you want to take a second and get into the other inconsistencies that you're referring to. We realized the one is that she says he never left the bed when he says that he did. But what are some of the others that make this important. So, some of the other the inconsistencies really go to the state's theory of the case the state's theory was that Mr Greer shot Mr Larry in a temper tantrum, because he was quote wound up all morning and that he was upset over cheating at a dice game. But, Miss Miss testimony does not support that theory at all. Miss Smith doesn't support the testimony as to careers demeanor or state of mind. She for example does not testify that there was any argument, she said testifies that both Greer's and Taylor's voices were just kind of loud, and that there was just a discussion about a dice game she testified that Mr Greer asked Mr Taylor to play the dice game and Mr Taylor refused. Whereas Hollis testified more to there being an argument that there was a back and forth. And so the theory of the case that the state or that Mr Greer was upset that he was angry comes down to the testimony of Mr Hollis and Miss Smith, whom the trial for found to be a credible witness, and whose testimony therefore was accurate he didn't discount her testimony in any way or claim that she or find that she was mistaken. Her testimony does not support any findings that Mr Greer had any motive, or his demeanor supported a committing the crime here and that's all the state has his motive and demeanor, because there are no eyewitnesses, and because there is no physical evidence, linking Mr Greer to the crime, they couldn't link the handgun to Mr Greer for example it was found in the possession of somebody else. The state must rely on motive and demeanor that's all they have. But we know that there was at least one other person in the living room, other than Greer and Larry in the living room when the shot was fired. That's what the trial court found counsel. Do these people know each other. That is a tech that was in some dispute. Mr Hollis testified that he saw Mr Greer that Mr Greer came around to the apartment, with some frequency, but that he didn't wasn't friends with him. He just knew him by by sight. Miss Smith testified that Mr Greer was only in the apartment maybe one or two or three times before, not often at all. So it's not at all clear that everybody knew each other or how well they knew each other. We do know however that Mr Taylor lived in the apartment with Mr Hollis, and thus had some connection with Mr Hollis, and he had some connection with the victim Mr. Mr Larry he was Mr Larry's cousin. So certainly on one side of the equation we seem to have a group of people who do know each other, Taylor, and Hollis, and Larry, and on the other side we have Mr. Greer, who, according to Miss Smith seem to be something of an outside. So, the trial judge, by not acknowledging or resolving the inconsistencies between Hollis's and Smith's testimony deprive Mr career of a fair trial, because this resulted in Mr career being convicted based on not only inconsistent but really an incompatible facts, as I mentioned the two, the two sets of states of affairs, testified to by the two witnesses really cannot go together. And as a result, the version testified to by Miss Smith really just puts Mr Greer in the living room. That's all it does. Otherwise, it does not support and indeed completely undermines Mr Hollis's version of events. And so if you look at Miss Smith's version of events which we have to take as true because that's what the trial court found he found Miss Smith to be a credible witness. And if we take her testimony as true which we have to do, then the evidence does not is not sufficient to support a verdict beyond a guilty verdict beyond a reasonable doubt. Under her version of events, Mr career did not kick the door. He wasn't angry. There was no argument. There was no cheating Hollis didn't leave the bedroom, and none of the statements that Hollis said were made by career Taylor or Larry actually were made and Taylor was in the living room when the shot was fired. That evidence as testified to by Miss Miss Smith does not support a guilty verdict beyond a reasonable doubt and this error alone thus requires reversal. Now the second error was by the trial court was failing to make an adverse inference that the key witnesses, not called by the state would have provided testimony damaging to the state's case. The two witnesses here being Eric banks and Tim Taylor. Both of those individuals were in the apartment that morning and thus could have verified or refuted Mr Hollis his testimony. Indeed, Taylor was most likely in the living room when the shots fired. And so he certainly could have testified as to who fired that shot with one obvious possibility being Mr Taylor himself. They were both available to the state, and indeed Taylor had been subpoenaed by the state. How do you know that they were both available to the state. They Mr Taylor lived in the apartment, and they knew where he was and in fact this case, this case was tried. After the fact, right. At the time of trial, how do you know that these witnesses even were in existence. Well we know that Mr. We know certainly Mr Taylor was in existence because he was subpoenaed by the state. Okay, he was under subpoena to show up. Okay. And so he was available he was he was in effect under the state's control, they could have forced him to come in. Okay. So, and what would he have added to this case, he would have been able, he would have been able to say because he was in the living room when the shot was fired, he would have been able to say who fired that shot. With one obvious possibility being himself. Well the testimony of the main stage witness was the only two people in the front room at the time of the shooting was a defendant and the victim. That everybody else everybody else had left. So what Mr Hollis testimony, but Miss Smith testified that she heard Mr Greer asked Mr Taylor, if you wanted to play the dice game. Taylor said no. And then immediately after immediately after a shot is fired, that's what she heard that it leaves no time for Mr Taylor to leave the apartment. And that gets back to the issue with regard to the credibility of the witnesses. The two witnesses tell different stories here, Hollis says Taylor left Miss Smith says Taylor was there, but the judge found them both to be credible. So, you don't go to the fairs. Oh what these quote absent witnesses would testify to your, you don't know that. Excuse me, sir, terribly sorry. You're assuming that they would testify in such a way that it would help the defendant, you don't know that you have no way of knowing that. That is the point of having the adverse inference judge the adverse inference indicates that their testimony would have been unfavorable, and the inference is given because the state didn't call them when it had the ability and the control to do so. That's, that's why the adverse inference is given. You don't know what that witness would testify to. We don't know for a fact, but that's why the adverse you don't know for a fact how can you, how can you reasonably draw an adverse inference that the testimony that you don't know what it consists of would be favorable to the defendant. How do you know that the adverse inference is drawn because the state had the ability and the control over the witness, and could have and could have called that witness to testify. When you have a situation where you have a single witness, such as Mr Hollis, whose testimony is uncorroborated, and it is inconsistent, and it is incomplete, then the state's failure to call another witness who could have corroborated that witness gives rise to the adverse inference. The and the inference being that Taylor would not have supported Hollis's version of events. Was this witness equally accessible to the defense. It's unknown. He was under subpoena by the state so we know the state had the ability to access the witness and indeed apparently intended to call him at one point, and then decided not to typically, typically the defense. They know a witness is under subpoena by the state, they will say to the state. If you're not going to call them, bring them in so that I can call. That may happen. Did that happen here. We do not know. However, we do know that the defense is under no obligation to put on a case to refute the state's case, the state has the burden of proof. And no doubt. And if the defense chooses not to put on any witnesses and put on any case that's the right of the defendant which the right was exercised here. And I think it would be unfair, not to mention perhaps problematic to say that the defense should have called a witness because the state didn't. That's leaning in the direction of requiring the defense to put on a case to refute the state's case. So that's why the adverse inference only works one way that the state didn't call a witness that was available to it. And when they don't do so because it's their burden than the, the inferences that that witness would not have supported the state's case. Now the third error here is the trial courts reliance on inadmissible hearsay, the statement in question being stopped waving that gun at my cousin. Now that was supposedly said by Mr. Taylor, the judge twice rule that this was inadmissible hearsay, but then he relied on the statement when he passed his verdict and again in the sentencing. But this really tipped the scales against Mr. Greer, because it's the only testimony that supports the conclusion that Mr. Greer picked up the handgun and pointed it in Mr. Larry's direction. There's no other evidence and no other testimony in the case suggesting that Mr. Greer threatened Mr. Larry, or indeed had anything to do with the handgun. So this statement, which was inadmissible hearsay, and should not have been relied on clearly made a big difference in the outcome of the case, and it was error for the trial judge to rely on it, and then, and that error requires reversal. Now the fourth legal error was making five factual findings that are not that were based on a mistaken recollection of the evidence. And all of these erroneous factual findings tended to show that Mr. Greer was a violent and angry person who was upset over cheating in a dice game. Exactly the state's theory, but the state's theory is not supported by the evidence. So, for example, the judge found that Mr. Greer woke up the whole house by kicking at the door. That's not what Mr. Hollis testified to. He testified he was the only one who was woken up. The second fact, erroneous factual finding was the finding that Mr. Greer remained angry, apparently the entire morning. But again, Mr. Hollis did not testify to that. He testified Mr. Greer appeared upset when he opened the door, but nothing about his demeanor the rest of the day. And then Miss Smith of course did not testify as to Mr. Greer's demeanor, either. The third factual error was making the finding that once inside the living room, only Mr. Greer's voice was elevated, and he was the one doing most of the arguing. In fact, Mr. Hollis testified that both Taylor and Greer were participating in the discussion, and Miss Smith testified that both men's voices were kind of loud. The fourth error was the finding that Taylor and Greer were arguing about somebody cheating at a dice game. Now Mr. Hollis speculated that somebody may have been cheating, but he didn't testify that he actually saw that or heard that. So there was no basis for the trial court to make the finding that there was cheating going on or that somebody was upset because of it. And the last error, factual error by the judge, was the finding that Hollis let Greer into the apartment. Now why does that matter? Well, it matters because it makes Hollis a more believable witness by telling a more believable story. What Hollis actually testified to was that there was something odd. He testified he opened the door, he and Greer just stood there, stared at each other for a couple of seconds, and then Greer turned around and left without saying anything. That's rather odd, inexplicable behavior. So the judge fixed it, and he said that Hollis let Greer into the apartment, which is a more believable, rational thing to do, and thus makes Hollis a more credible witness. So all of these errors together worked to support the state's theory, but the problem is the facts don't support that theory. So that requires reversal. Now the second main reason to overturn the conviction here is that there is insufficient evidence to support a guilty verdict beyond a reasonable doubt. This is a circumstantial case with no eyewitnesses and two witnesses who had contradictory versions of the events. And the evidence of supposed motive and demeanor is weak and supplied entirely by Mr. Hollis and the judge's erroneous factual findings. So let's look at all the ways in which Hollis' testimony was uncorroborated, contradictory, and incomplete. First, his testimony, as we discussed, is not supported by Ms. Smith. She does not support Hollis' testimony and in fact contradicts him as to Greer's demeanor and state of mind, as to the argument about the dice game, as to Hollis leaving the bedroom, or Hollis' ability to hear what was said in the living room, and the supposed statements made by Greer and Mr. Larry, as well as Taylor leaving the apartment. That's all Hollis. None of that is Smith, who testified to a completely different version of the event. Hollis' testimony also is internally inconsistent and contradictory. For example, how long was Mr. Hollis in the living room? It was either one or two seconds or two or three minutes, depending on his testimony. He said both. And that makes a big difference when you consider all the things that he said he saw in the living room. Did he really have enough time to see everything? He was also inconsistent about the statements supposedly made by Mr. Greer and Mr. Larry. He inconsistently testified, first, as to whether the statements were even made, and secondly, as to when they were made, either before or after the shooting. He flipped back and forth on that, and that again makes a big difference as to what impact those statements would have had on the outcome of this case. And finally, the picture that Mr. Greer paints is just not very believable. He testified that Mr. Greer supposedly kicked the door hard enough to wake up Mr. Hollis, but it didn't wake up Miss Smith or Mr. Larry. Mr. Larry is in the living room, sleeping right next to the front door. So this is either a very specific and highly directional level of noise, or the event did not happen. There also, as I mentioned, was not enough time for Mr. Hollis to observe everything that happened in the living room, especially not if he was in there for only one or two seconds, as he originally testified. But even at two or three minutes, he testified to so much going on that the time frames just don't add up. And of course, Hollis testified that he heard everything that was said in the living room, even though he was in another room, there was a closed bedroom door, and the television was on loud, and Miss Smith, the credible witness, testified that she could only hear bits and pieces of what was said. And then there are Greer's supposed statements. The first one, get the F out of folks' crib. Why would Mr. Greer, who didn't live in the apartment, tell either Taylor or Larry, who lived there, to get out? That doesn't make any sense. And then there's the statement, I should have killed the whole effing house. Now, of course, there was no reason for anybody to say that before the shooting, as Mr. Hollis testified happened, but then he changed his testimony and said it happened afterwards. But consider that if that was the case, then Mr. Hollis was actually scrambling out of the bedroom window to get out of the apartment at that point, and yet he somehow heard this statement with crystal clarity. Again, this just doesn't add up. So if we discount the weak and unsupported testimony of Mr. Hollis, what does the actual evidence show here? Well, there were at least seven people in the apartment that morning, and we know at least one person, other than Mr. Greer and Mr. Larry, was in the living room when the shot was fired. So who was this person? Well, most likely it was Mr. Taylor, but it could have been at least three others. It could have been Andre Anderson, the person who actually possessed the handgun and who has an unconvincing alibi. Was he really shopping for a prom at 7.30 in the morning? And then there's this individual known only as Mike Mike, who refused to cooperate with the police and about whom we know virtually nothing. And then there's the unidentified individual on the video camera footage. And the handgun otherwise is completely unconnected to Mr. Greer. So the actual evidence supports the conclusion that someone other than Mr. Greer shot and killed Mr. Larry. It does not support a guilty verdict beyond a reasonable doubt. So for these reasons, Mr. So if we were to find that the evidence was insufficient to convict, that would be an outright reversal. But if we were to find that the evidence was sufficient to convict, and then we make the reasonable finding that the trial judge in a bench trial considered only the admissible evidence. How do we get to a new trial? If you find you would have to find that the judges didn't either didn't make the legal errors or that the legal errors were somehow harmless. We know the trial judge, though, did not consider only admissible evidence because he relied on the inadmissible hearsay statement. And we know that the trial judge made the factually erroneous findings. You can look through the record and it doesn't support the findings that he made about Greer's demeanor or certain things that happened. And we know that the trial judge found both witnesses to be credible, making inconsistent credibility findings and setting up a conflict between these versions of events that the trial judge simply failed to resolve. So we cannot discount those errors and those errors require at a minimum, a new trial. But I think those errors really play into the idea that there was insufficient evidence, particularly if you look at Ms. Smith's version of events, which again, simply puts Mr. Greer in the living room, but otherwise does not does not support a guilty verdict beyond a reasonable doubt. So for those reasons and for the reasons set forth in our briefs, we respectfully request that the court reverse the conviction and either acquit Mr. Greer outright or in the alternative, remand this case for a new trial. Thank you. Thank you, Mr. Bright and Mr. Cox. May it please the court, Assistant State's Attorney Tyler Cox on behalf of the people of the state of Illinois, urging this court to affirm the defendant's conviction for first degree murder, where the people proved the defendant guilty beyond a reasonable doubt. Trial court did not err in its findings and any error on the part of the trial court was entirely harmless in light of the overwhelming evidence of the defendant's guilt. I will turn to each of the defendant's alleged errors by the trial court in turn. However, I want to make one thing clear. In this case, the defendant was the sole shooter and the sole person responsible for killing the victim. Tommy Hollis saw the defendant in his apartment with the victim, a gun, and two others. As the apartment broke out, Tommy left the room and saw or heard everyone except for the defendant and the victim leave the apartment. Tommy then heard the victim pleading and then a gunshot. The defendant was seen on surveillance video shortly thereafter, leaving the apartment. The victim eventually died from the gunshot. Based on all the evidence, including the testimony of Tommy, as well as Jennifer, and the surveillance video and all other evidence, especially when viewed in the light most favorable to the people, overwhelmingly established defendant's guilt for first degree murder beyond a reasonable doubt. Mr. Cox, before you go on, how do you respond to Mr. Bright's argument that this should probably be a de novo review for a couple of reasons? One is that the trial court clearly, at least that's Mr. Bright's argument, that the trial court clearly considered evidence in its ruling that it had already sustained the objection to. And also the issue of the trial court finding two witnesses with opposite stories in some cases, both credible, who are saying two things which could not have both happened in this particular case. Do you want to respond to that? Absolutely, especially when it comes to the determination of the credibility of the witnesses. Obviously, that is within the responsibility of the trial effect. And this court has held in People v. Grobe, the standard of review in that case is abuse of discretion, just like any time you're weighing the evidence of the defendant's guilt in this case. So we would argue it's an abuse of discretion when you're looking at the evidence surrounding the defendant's conviction in this case. Now, turning to the determination of the credibility of the witnesses, the circuit court explicitly found both Jennifer and Tommy to be credible witnesses. Defendant points to different instances where their testimonies did not line up exactly. However, it was the circuit court's responsibility as that trial effect to resolve any minor inconsistencies or any inconsistencies in the testimony of these witnesses before making a determination of guilt. And that's exactly what this court did. It heard the varying testimonies in terms of whether or not Tommy left the bedroom. Tommy testified he left the bedroom, obviously, and he saw all these events take place in the living room, whereas Jennifer testified she did not see Tommy leave the bedroom, but she was trying to sleep at the time. Tommy also testified that he knew the defendant. He had seen him approximately 40 to 50 times during the shooting, whereas Jennifer had only seen the defendant a couple of times. These are not inconsistencies. They're just simply different experiences of these witnesses. And the circuit court properly weighed these different testimonies and made its determination. And this court should not second-guess the determination of the circuit court in this case. Now, is that true even where the trial court has sustained objections and then used the same information that was not allowed in its ruling? Yes, Judge, to that point, people maintain that the defendant has forfeited this particular issue by not including a specific claim of error in his post-trial motion. However, even if this court were to review it, the people maintain that the evidence could have been admissible as an excited utterance. I think on that issue, our Supreme Court decided in People v. Enoch 1988 that it was not weighed, that it hasn't been weighed. That's 122 IL 2nd 176 at 186. But it's not weighed. Judge, I'm familiar with that. There are also cases, including People v. Arroyo, that have held that where it's just a vague, general, due process claim that there needs to be some kind of specific claim. However, even turning to the merits of the defendant's claims in this case, especially with regard to this particular issue, whether or not the trial court relied on that one single statement that came up numerous times during the testimony, this could have been admissible as an excited utterance. While the people acknowledge that it was the circuit courts within their discretion to exclude that as inadmissible, the people maintain that it could have been admissible. And that just seems serves to demonstrate this was a closed case of admissibility, and therefore it was not so unduly prejudicial or problematic to the defendant as to deprive him entirely of due process in this case. Furthermore, even if this court were to find that the circuit court erred in its one statement about the stop waving the gun in deciding a finding, that error was entirely harmless, given the sheer amount of evidence, the overwhelming evidence of defendant's guilt in this case. Overwhelming evidence of defendant's guilt. This is an ear witness case, correct? In terms of the actual shooting, yes, you are correct, Judge. However, there's much more than just the ear witness. There's surveillance video putting the defendant leaving the scene shortly thereafter after the shooting. Right, but isn't it correct that that surveillance video shows that the defendant is calm, doesn't have any bulges in his pocket, he's not trying to hide his face, he didn't put on a hoodie. As the guy who tried to put on a pipe bomb a few days ago, he clearly had a hoodie on the entire time. I mean, that's what, well, I won't say that, but I mean, you know, he didn't, he didn't try to hide anything. That is correct, Judge. However, that doesn't defeat the fact that the defendant is seen on video leaving that apartment very soon after the shooting. In this case, it puts him directly on the scene, as well as testimony of both Tommy and Jennifer. But there were also other people on the scene as well. At one point, yes, there were. So because an individual is on the scene, that doesn't get you to that individual being the shooter. No, it doesn't. However, there is also more than just the defendant being on the scene. There was testimony of both Tommy and Jennifer. The defendant was arguing with Tin Man throughout the night. The defendant was upset throughout the night that both Tin Man and E-Boy, Eric and Taylor, had left the apartment before the shooting had taken place. And the fact that Tommy saw a gun with an extended clip on the table in the living room next to the defendant while he was out in the living room. So there's more than just the defendant on the scene. There's ample evidence that the defendant was the sole shooter, the sole person responsible for killing the victim in this case. Mr. Cox, how do you respond to Mr. Walker-Bright's argument regarding the inconsistencies between the testimony of Tommy and Jennifer? It was the circuit court's function as a trial of fact. This was not a jury case. This was a bench trial, obviously. It was their sole responsibility to determine the credibility of the witnesses and to resolve any inconsistencies in that testimony before reaching a verdict. I guess what I'm actually asking is, do you consider the inconsistencies to be as serious or severe as Mr. Walker-Bright has argued to us that they were? Not at all, Judge. As I alluded to earlier, the inconsistencies come down to the number of times that Tommy and Jennifer had both seen the defendant. Obviously, that comes down to two different personal experiences. They did not testify about each other's experience with the defendant, just their own experience prior to the time. There's also the inconsistency regarding whether or not the defendant left the bedroom. Tommy obviously specifically stated he did leave the bedroom, he went and saw all these things, and he was up hearing what was going on in the living room throughout the entire process. While Jennifer testified that she did not specifically see Tommy leave the bedroom, she also testified she was trying to sleep at the time. She did not testify without a doubt that Tommy never left. She did not see Tommy leave the bedroom at that point. In terms of the inconsistencies, if there were, they were very minor, at best, inconsistencies in this case. That was for the trial of fact to resolve. Now next, turning to the adverse inference that counsel brings up, or the defendant argues, that was not required in this case. The people very clearly are not required to call every single witness of a crime, and the failure to do so does not ordinarily create a presumption that that testimony would be unfavorable to the people. Only in very narrow set of circumstances is a negative inference permissible. The cases that defendant cites in asking the circuit court to draw a negative inference both involve drug cases with confidential informants. Obviously by their very nature, confidential informants possess a very unique knowledge of crimes, and they are also eyewitnesses to that crime. That is not the case here. There is no confidential informant. There's nothing about this case that line up with both Strong or Johnson, and therefore the circuit court was not required to draw an adverse inference against the people in this case. Finally, regarding the circuit court's mistaken recollection in this case, people maintained that the findings of the circuit court were supported by the evidence, reasonable inferences from that evidence, or even where the court slightly misremembered evidence, it was not about crucial evidence, evidence that was the crux of the defendant's case. Defendant points to five snippets or five comments that the circuit court made during its findings. However, each of these five were either supported directly by the testimony or by the evidence, were based on reasonable inferences from that evidence, or at the very least were not about crucial evidence. First, the circuit court said the defendant woke up the whole house. Obviously, Tommy testified that he was awoken by the kicking at the front door. He went to open it and the defendant was standing there. It's from the evidence from Tommy's testimony, or at the very least was about non-crucial evidence. Both Tommy and Jennifer put the defendant on the scene later on, immediately before the gunshot. Defendant does not argue that he was not at the apartment before the gunshot after he knocked on the door, kicked at the door. Next, the circuit court stated he or Tommy let the defendant into the apartment. Obviously, Tommy testified that he opened the door, defendant was standing there, and the defendant left. Again, this was a reasonable inference from the evidence, or at the very least, not about crucial evidence in this case. Third, the court said the defendant remained angry, or he remained angry. Tommy testified that when he first encountered the defendant, he was angry, aggravated, and mad. He also testified that Tommy and Jennifer later on, that the defendant was involved in arguments when he was at the apartment with Tin Man and the others. So this was based directly on the evidence. Next, the circuit court stated the conversation was mostly elevated and attributed to the defendant. Tommy and Jennifer both testified to the arguments going on, and Jennifer specifically testified that the defendant was louder than Tin Man, so it was mostly attributed to the defendant in this case. Finally, the circuit court stated it was about somebody cheating in a $5 to $10 dice game. Tommy testified that the argument between the defendant and Tin Man was about $5 to $10, and Jennifer testified that during the argument, the defendant wanted to shoot for five, and Tin Man didn't want to. So it was a reasonable inference the circuit court made that this was about somebody cheating at a dice game, or at the very least, was not about crucial evidence. But Mr. Cox, when you look at all the inconsistencies between the testimony of Hollis and Smith, it seems to me that it's impossible to have found them both credible. So I need you to help me with that. I'm struggling. Absolutely, Judge. Obviously, no two witnesses are going to have stories that are exactly the same. If they were, that'd be much easier. However, the circuit court, especially when it's the fact finder, when it is a bench trial, its responsibility is to determine the credibility and resolve any inconsistencies in this case. Right, but doesn't Mitchell address that issue? Counsel cites people being Mitchell. I think Mitchell addresses that issue, and that's a Supreme Court decision. I've had this first court decision of People v. Mitchell. This is a 366—oh, I'm sorry, it's a public court decision—Ilep 3rd, 144, page 10—1044, page 1051. I just want to make sure it's on the same page there. Obviously, the circuit court in this court, in that case, is a manifestly erroneous standard in finding a trial court erred and denying a defendant's motion to suppress. This court looked at the totality of the circumstances in finding a trial court erred and denying a defendant's motion to suppress. This case, as opposed to Mitchell, only alleges two of the seven different things, different totality of the circumstances, that were at play in Mitchell—the inconsistent credibility findings and the findings, in fact, contradicted by the record. So it was more than just the inconsistent credibility determinations that were looked at in Mitchell. And this court, excuse me, this court properly pointed out that the credibility determinations are part of the responsibility of the circuit court in these cases, and that's exactly what happened here. Well, it's the circuit court's responsibility, but when the circuit court finds two people credible, where in most cases it's very difficult to have found that, then the circuit court is not given that same deference. Yes, Judge, if this court finds that the findings or the determinations of the circuit court are so unreasonable, improbable, or unsatisfactory, then yes, there is not normal deference. However, the circuit court's determinations in this case does not rise to that level. Again, these are at best minor inconsistencies. This is nothing but the defendant's attempt to be retried on appeal. The circuit court was in the best position to hear the witnesses, to view the testimony, to view the live evidence, including the surveillance video, view all this evidence together, and make the ultimate determination that the defendant was guilty beyond any reason. This court should not substitute its judgment based on the cold record in front of it. Judge, just getting to the last point, in this case, viewing the evidence in the light most favorable to the people, which is obviously the standard when viewing whether or not the people prove the defendant guilty beyond a reasonable doubt, viewing all the evidence in the light most favorable to the people, including the testimony of Tommy, the testimony of Jennifer, as well as the surveillance video and other evidence, there was overwhelming evidence of the defendant's guilt, and the circuit court's determination of guilt should be affirmed in this case, and defendant's conviction should be affirmed. Thank you, Mr. Cox. Mr. Bright. Thank you, Your Honor. I have three points I'd like to make on rebuttal. First, the point about the judge's responsibility to resolve and determine credibility and resolve conflicts in the evidence. The state's argument here, I think, really comes down to the assumption that the judge must have decided against the credibility of Ms. Smith, because he relied so heavily on Mr. Hollis's version of events. But he did find that both witnesses were credible. And this is really similar to the best spin you can put on what the judge did here, is that he erroneously may have thought that Ms. Smith's testimony supported Mr. Hollis's testimony. But we've seen in the case of People v. Williams, in which the judge erroneously thought that the defendant's expert supported the prosecution's expert, that when the judge makes that kind of error, it requires reversal. We can't assume that the judge found against the credibility of Ms. Smith here, because first of all, he said he didn't. He said he found Ms. Smith credible. And secondly, he didn't make any findings to the fact that Ms. Smith was mistaken or discounted any of the testimony. So under the authority of People v. Williams, where he's apparently mistakenly thought that Smith supported Hollis, that requires a reversal. The second point is on the excited utterance, exception to hearsay. The state never made that argument in the trial court, and with good reason. Because in order for an excited utterance to be admissible as evidence of a startling occurrence, in this case, it would have been the waving the gun at Mr. Larry, the Supreme Court has held that there must be some other evidence that corroborates the statement in order for it to be admissible. The statement itself cannot be the only evidence of the startling occurrence. But that's exactly what we have here. The only evidence that Mr. Greer picked up the gun, had anything to do with it, threatened Mr. Larry, is the hearsay statement by Mr. Taylor. So excited utterance does not work to let that statement in. And it should be reviewed. Just make a brief point as well that it should be reviewed, even if this court were to find that there was a waiver, it clearly should be reviewed under the plain error standard. This is a closely balanced case. We have one witness, Mr. Hollis, whose testimony is not supported by the other witness, Ms. Smith. Mr. Hollis, his own testimony has a lot of problems with it. So it's a closely balanced case, and it clearly had a significant impact on the outcome. So under both prongs of the plain error test, the court should review it, even if it were to find that there was a waiver in the trial court. And the last point I would like to make is on the adverse inference point. The state argues that adverse inference is only allowed in cases where there is an informant and in a drug case, and the informant is under the control of the state. That is not the case. We cited a case in our brief. It's People v. Smith, 3 Illap Third 64, in which there was a murder that happened. It was at a party in an apartment. There were a number of people in the apartment at the time of the murder. The state only called one witness who testified as to what he said he saw, and he put the blame on the defendant and said the defendant committed the crime. The state didn't call any of the other people that were witnesses or were at the party and saw what happened. And this court imposed an adverse inference against the state. Those were not informants. They were not under the control, quote unquote, of the state, but they were there, they saw what happened, and given the problems with the one witness's testimony that existed in that case, the court said there should have been an adverse inference. So the court should do the same things here because there is also a problem with the one witness, Mr. Hollis. His testimony is weak, it's uncorroborated, it's incomplete, and therefore the inference applies. And so for that reason, we request the court to, in all the reasons we've discussed today and in our briefs, the conviction should be reversed and Mr. Greer should be acquitted outright, or in the alternative, there should be a new trial. Thank you. Thank you both. Excellent argument, and the hearing is adjourned.